**NOT FOR PUBLICATION**

FILED
JAMES J. WALDRON, CLERK
SEP -9 2016
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In Re: <br><br> MARK GALLAGHER and PAMELA GALLAGHER, <br><br> Debtors. | Case No.: 13-26584-ABA |
| GIGI GALLAGHER ROSENBERGER, individually, and NANCY CELLA, as executrix of the Estate of John J. Gallagher, <br><br> Plaintiffs <br><br> v. <br><br> MARK GALLAGHER and PAMELA GALLAGHER, <br><br> Defendants | Adv. No.: 14-01236-ABA <br><br> Chapter: 7 <br><br> Judge: Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is the adversary proceeding filed by Plaintiffs Nancy Cella, as executrix of the Estate of John J. Gallagher, and Gigi Gallagher Rosenberger, objecting to discharge and dischargeability under sections 727(a) and 523(a) of title 11 of the United States Code (the "Bankruptcy Code"). Prior to trial, the court dismissed all claims against Defendant Pamela Gallagher, all of Ms. Cella's section 523 claims against Mark Gallagher, and several of Ms. Rosenberger's section 523 and 727 claims against Mark Gallagher. As to the remaining claims under section 523(a)(2)(A) and section 727(a)(4)(A), the court finds that the Plaintiffs did not present evidence necessary to meet their burden of proof and thus it rules in favor of the Mark Gallagher.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The Debtors, Mark and Pamela Gallagher, filed a voluntary petition for bankruptcy under chapter 7 of the Bankruptcy Code on July 30, 2013. On February 14, 2014 Ms. Rosenberger and Ms. Cella filed this adversary proceeding seeking the denial of discharge of certain debts under section 523 and objecting to the discharge of the debtors under section 727. The Debtors filed a motion for summary judgment on November 3, 2015, and following a hearing, the court granted the motion in part and denied it in part. All claims against Pamela Gallagher were dismissed, as were all of Ms. Cella's section 523 claims against Mark Gallagher, along with several of Ms. Rosenberger's claims under sections 523 and 727. The claims that remain against Mark Gallagher are Ms. Rosenberger's claim under section 523(a)(2)(A) and both Plaintiffs' objection to the discharge of Mark Gallagher under section 727(a)(4)(A).

A trial was held on June 16, 2016 and both parties submitted post-trial briefs on August 5, 2016. The following are the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Before delving into the procedural facts, an explanation of the relationship of the parties is helpful. Pamela and Mark Gallagher are husband and wife. Mark and his brother, Terrence Gallagher, co-own Gallagher Brothers LLC ("Gallagher Brothers") each as a 50% owner/member. Mark Gallagher also owned a company called Mark Gallagher Inc. and had interests in companies named Malmar Inc. and Atlantic One Tilton LLC. Mark and Terrence's brother, John C. Gallagher, is a partner in the accounting firm of Gallagher & Rhodes, P.A. John. J. Gallagher was a cousin of Mark Gallagher and owned a company, John Gallagher Painting that Gallagher Brothers often hired as a commercial painter for its various construction projects. John J. Gallagher is deceased, and his sister, Ms. Cella, as the executrix of his estate, is a Plaintiff in this adversary proceeding. Gigi Gallagher Rosenberger ("Ms. Rosenberger" and together with Ms. Cella the "Plaintiffs") was a real estate broker with 20 years of experience. Gallagher Brothers often hired her firm, CBAG LLC, as the agent for various projects the company purchased and completed.

Gallagher Brothers was a construction company that purchased properties and constructed residential and commercial buildings "on spec," with the intent to sell the properties once construction was completed. In and around 2008, Gallagher Brothers was constructing a commercial project at 3330 Bargaintown Road, Egg Harbor Township, New Jersey ("Bargaintown Road") when financial difficulties arose with the project.

Sometime in 2007, Gallagher Brothers borrowed $995,000 from CBAG LLC (the "Rosenberger Loan").[1] Mark Gallagher personally guaranteed this loan. Beginning in November of 2007 and continuing through October of 2008, Ms. Rosenberger wrote four checks to Gallagher Brothers.

---

[1] Though the loan came from CBAG LLC, not Ms. Rosenberger, no party objected to the standing of Ms. Rosenberger to bring this suit, and therefore the court will copy the parties in referring to Ms. Rosenberger as the lender.

In February 2008, Gallagher Brothers borrowed $775,000 from John J. Gallagher (the "John J. Loan"). Mark Gallagher also personally guaranteed this loan.

Finally, in late 2008, Mark Gallagher pledged his shares in Gallagher Brothers as well as his interest in his other corporations as security for a $225,000 loan from his brother John C. Gallagher's accounting firm, Gallagher & Rhodes, P.A (the "John C. Loan").

Around the time work began on Bargaintown Road, Gallagher Brothers had several other projects under construction and Mark Gallagher was also completing work on his personal residence on Osborne Avenue, Margate City, New Jersey (the "Osborne Property"), as well as working on several other projects. In 2012, Bargaintown Road was lost in a foreclosure action. Gallagher Brothers was unable to repay the Rosenberger Loan or the John J. Loan.

On July 30, 2013, the Debtors filed their chapter 7 petition. Their Schedules I and J indicated that Mark Gallagher had no income from January through July of 2013. Additionally, the Statement of Financial Affairs filed indicated that he had no income from employment or operation of business in 2012.

## DISCUSSION

As noted above, the only claims remaining against Mark Gallagher are the claim by Ms. Rosenberger under section 523(a)(2)(A) and the claim brought by both Plaintiffs under 727(a)(4)(A). These claims will be discussed separately.

### A. Exception from Discharge under 523(a)(2)(A)

Turning first to the claim under section 523(a)(2)(A), the Bankruptcy Code states that a debt may be excepted from discharge if it was obtained under false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(3)(A). The elements of section 523(a)(2)(A) must be established by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Generally, the provisions of section 523(a) are "strictly construed against creditors and liberally construed in favor of debtors," owing to the overriding bankruptcy purpose of granting debtors a fresh start. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). The elements that must be proven for fraud under section 523(a)(2)(A) are:

> (1) the debtor obtained money, property or services through a material misrepresentation;
> (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;
> (3) the debtor intended to deceive the creditor;
> (4) the creditor [justifiably] relied on the debtor's false representations; and
> (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

*In re Karpo*, 2011 WL 3034486, at *6 (Bankr. D.N.J. July 22, 2001) (citing *De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523

U.S. 213 (1998)). Gross recklessness satisfies the scienter requirement of section 523(a)(2)(A). *In re Bocchino*, 794 F.3d 376, 380 (3d Cir. 2015).

Applying these elements to this case, the court cannot find that Ms. Rosenberger met her burden. Specifically, she failed to show that Mark Gallagher made any misrepresentation that he knew at the time was false or that he made with gross recklessness at the time of the transaction.

Ms. Rosenberger alleged five misrepresentations or omissions made by Mark Gallagher, which she relied to her detriment in deciding to agree to the Rosenberger Loan. First, she alleged that Mark Gallagher told her that the proceeds from the Rosenberger Loan would be used exclusively for Bargaintown Road, when the funds were in fact used for other things including the Osborne Property. Next, she alleged that Mark Gallagher misrepresented that the proceeds from the Rosenberger Loan would be held in a separate account. Third, she alleged that Mark Gallagher omitted that Gallagher Brothers was receiving additional funding through the John J. Loan. Fourth, Ms. Rosenberger alleged that Mark Gallagher omitted the fact that he intended to pledge his interest in Gallagher Brothers and other companies as security for the John C. Loan. Finally, Ms. Rosenberger alleged that Mark Gallagher failed to inform her that the bank had already rejected a Gallagher Brothers loan application, and instead intimated that he simply did not want to deal with the bureaucracy of the bank.

The only evidence submitted by Ms. Rosenberger were two exhibits, neither of which established any of the allegations listed above, or any of the elements Ms. Rosenberger was required to establish under section 523(a)(2)(A). She offered four checks from CBAG LLC to Gallagher Brothers totaling $995,000. Ex. 2. Mark Gallagher never contested that a loan in the amount of $995,000 was made by Ms. Rosenberger. Thus, these checks did not help establish any of the elements discussed above.

Second, Ms. Rosenberger admitted into evidence Cape Savings Bank account statements for Mark and Pamela Gallagher (the "Accounts Statements"). Ex. 10. The Account Statements are unrelated to the section 523 claim and relate instead, only to the claim under section 727.

Thus, Ms. Rosenberger asks the court, based only on the testimony presented at trial, to conclude that the Rosenberger Loan should be excepted from discharge.

### a. Proceeds of the Rosenberger Loan would be used exclusively for the Rosenberger Loan

Ms. Rosenberger testified that Mark Gallagher specifically told her that the proceeds of the Rosenberger Loan would be used exclusively for Bargaintown Road. (TR at 85:10-19.[2]) However, even assuming that the Ms. Rosenberger's testimony alone was enough to convince the court that Mark Gallagher made this representation, there is no evidence presented that this representation was false. When asked during direct examination whether she knew what the money from the Rosenberger Loan was used for, Ms. Rosenberger stated that it was used "for the finishing the Bargaintown Road." (TR at 63:4.) When her attorney pressed further on the subject, Ms. Rosenberger admitted that she did not know what the money wound up being used for. (TR

---

[2] The transcript of the one-day trial will be referred to as "TR at page(s):line(s)."

at 64:15-19.) More importantly, despite suggestions to the contrary, there is absolutely no evidence, other than unsupported self-serving statements, that establishes that the proceeds of the Rosenberger Loan were used for anything other than what it was represented to be for, i.e., Bargaintown Road. There were suggestions that the Rosenberger Loan proceeds were used for the Osborne Property and other projects, but not one piece of evidence remotely indicated this was the case.[3]

### b. Gallagher Brothers also received funding from the John J. Loan

Ms. Rosenberger stated during her direct examination that Mark Gallagher had approached her to discuss the loan in 2007. (TR at 38:6-11 - 39:3.) She later clarified it was in the summer of 2007. (TR at 62:11.) Further, she testified that Mark Gallagher failed to inform her at the time that Gallagher Brothers was also receiving a loan from John J. Gallagher. (TR at 51:3-15; 54:11-14.) The evidence available, including a statement from the Plaintiffs' complaint, indicates that that the John J. Loan was made on February 1, 2008, some months after Ms. Rosenberger's conversation with Mark Gallagher took place. Additionally, the first check from CBAG LLC to Gallagher Brothers is dated November 27, 2007, again several months prior to the John J. Loan. No further evidence was presented to establish that Mark Gallagher knew at the time of the transaction or misrepresented with gross recklessness that Gallagher Brothers was receiving the John J. Loan. Thus, as to this allegation, the Ms. Rosenberger has failed to establish the second element of the 523(a)(2)(A) claim, that Mark Gallagher knew or acted with gross recklessness at the time of the transaction that he was making a material misrepresentation.

### c. The bank had rejected the Gallagher Brothers loan application

Ms. Rosenberger testified that Mark Gallagher failed to inform her that the bank had rejected the Gallagher Brothers loan application. (TR at 49:24-50:2). According to her testimony, Mark Gallagher expressed anger at the paperwork the bank required. (TR at 49:18.) The court does not find Ms. Rosenberger's testimony alone sufficient to establish that Mark Gallagher made a misrepresentation as to the status of the loan application. Throughout his testimony, Mark Gallagher consistently and repeatedly stated that his brother Terrance Gallagher handled all the finances for Gallagher Brothers. (TR at 160:23-161:4.) He further credibly testified that he handled the construction aspect of the business and was not involved in any of the financing. (TR at 116:18-117:22.) In fact, Mark Gallagher stated that he had no memory of ever soliciting a loan from Ms. Rosenberger, but that he called John J. Gallagher and John C. Gallagher to ask for money, while Terrance approached Ms. Rosenberger and Ted Gallagher regarding loans to Gallagher Brothers. (TR at 145:23-146:4.) When pressed on whether he was aware that the bank had rejected their loan application, Mark Gallagher responded that he was not involved in the financing, he did not know the specifics, but that he just knew that they were not getting the money from the bank. (TR at 139:24-140:3.) Further, when asked what he told people when he reached out to request loans, Mark Gallagher responded that all he remembered was telling people that "we need money, talk to Terrance." (TR at 160:23-161:4.) Mark Gallagher made clear that all questions regarding the reasons for funding were referred to Terrance. (TR at 149:17-21). Ms. Rosenberger submitted no evidence other than her testimony to contradict Mark

---

[3] Presumably if this were the case, the books and records of Gallagher Brothers would have reflected this, but Ms. Rosenberger did not produce this kind of evidence.

Gallagher's testimony. While she implores the court to infer a misrepresentation from the totality of the circumstances, here, the court cannot. It seems to the court that the testimony of Terrance Gallagher could have been used to contradict Mark Gallagher's statements. Ms. Rosenberger could have also submitted evidence of Mark Gallagher's direct involvement in the finances of Gallagher Brothers, such as business records, but she did not. Finally, there is insufficient evidence that shows that Mark Gallagher knew or should have known that the bank had in fact rejected the loan at the time of the transaction with Ms. Rosenberger.

### d. The Rosenberger Loan proceeds would be held in a separate account

Ms. Rosenberger alleged that Mark Gallagher promised that the proceeds of the Rosenberger Loan would remain in a separate account. However, she presented no evidence that Mark Gallagher in fact made this representation, nor any evidence as to where the proceeds of the Rosenberger Loan were in fact kept. As such, the she failed to prove this misrepresentation.

### e. Mark Gallagher omitted that he intended to pledge all of his assets to secure the John C. Loan

Similarly, Ms. Rosenberger alleged that Mark Gallagher failed to inform her that he intended to pledge all of his assets as security for the John C. Loan. However, she presented no evidence that Mark Gallagher even knew that there would be a John C. Loan at the time he agreed to the Rosenberger Loan. Certainly there was no evidence presented that established that the John C. Loan was part of a fraudulent scheme directed at Ms. Rosenberger.

### f. Conclusion

The post-trial brief filed by the Plaintiffs attempts to address the complete lack of evidence supporting the Ms. Rosenberger's claims by citing to *In re Cohen* 191 B.R. 599 (D.N.J. 1996). In *Cohen*, the court addressed the inherent problem of trying to prove that the debtor knew a statement he was making was false, and that he did so with intent to deceive. The court stated that " . . . because a debtor will rarely, if ever, admit that deception was his purpose . . . intent to deceive can be inferred from the totality of circumstances, including the debtor's reckless disregard for the truth." *Id.* at 605. However, this does not relieve Ms. Rosenberger from having to present at least some evidence to support her case. Ms. Rosenberger rested her case without submitting any evidence related to the 523(a)(2)(A) claim that Mark Gallagher hadn't already admitted. There was no evidence presented that Mark Gallagher had a reckless disregard for the truth, and the totality of circumstances did not permit the inference of his intent to deceive Ms. Rosenberger with any representations or omissions.

Moreover, it is unclear how any of these alleged misrepresentations or omissions led to Ms. Rosenberger's injury. She established no nexus between, for example, the loan proceeds being held in a separate account and the failure of the Bargaintown Road project that allegedly caused the Gallagher Brothers to be unable to repay her loan. Had the loan proceeds been used exclusively for Bargaintown Road, would it have been successful and therefore brought a return that could have repaid her in full? Ms. Rosenberger did not connect these dots.

Ms. Rosenberger is an experienced businesswoman, a realtor for 30 years, and running a successful brokerage firm for over 10 years. She had worked with Gallagher Brothers on several projects. There is no indication that Mark Gallagher took advantage of her. She had a direct stake in the completion and success of the Bargaintown Road project and thus it makes sense that Gallagher Brothers would look to both her and John J. Gallagher for funding rather than outsiders when the bank would not fund.[4]

Ms. Rosenberger's failure to establish that Mark Gallagher made any misrepresentations that he was aware were false or made with gross recklessness at the time of the transaction leaves the court with no choice but to find that the debt owed to Ms. Rosenberger should not be excepted from discharge and to deny the 523 claim against Mark Gallagher.

### B. Objecting to Discharge under 727(a)(4)(A)

Turning to the Plaintiffs' claim under section 727(a)(4)(A) of the Bankruptcy Code, it is similarly clear that the Plaintiffs failed to meet their burden in establishing that Mark Gallagher should be denied discharge. Section 727(a)(4)(A) states that a debtor is ineligible for a discharge if he or she knowingly and fraudulently, or in connection with the case made a false oath or account. 11 U.S.C § 727(a)(4)(A). Discharge will be denied if: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). "In general, § 727 is to be construed liberally in favor of the debtor and strictly against those objecting to discharge." *In re Last*, 440 B.R. 642, 649 (Bankr. D.N.J. 2010) (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993)). The plaintiff must prove its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *In re Park* 2016 No. 13-34203, 2016 WL 693492, at *3 (D.N.J. Feb. 18, 2016) (Citing, *Scimeca v. Umanoff*, 169 B.R. 536, 543 (D.NJ. 1993) aff'd sub nom. *In re Scimeca*, 30 F.3d 1488 (3d Cir. 1994)). The Bankruptcy Court's findings with respect to this issue may not be set aside unless clearly erroneous. *Id.*

In this case the Plaintiffs argue that Mark Gallagher made a false account on Schedule I & J and the Statement of Financial Affairs when stating that he had no income from January 2012 through July 2013. To support this, the Plaintiffs point to the Account Statements showing several large deposits into the personal account of Mark and Pamela Gallagher as evidence that Mark Gallagher had income during 2012 and 2013. At trial, the Plaintiffs focused on a deposit of $20,000 in February 2013 and a deposit of $10,000 in July of 2013, although there were several other deposits made in during the time-period.

---

[4] Indeed, evidence was presented that Ms. Rosenberger knew there was some issue with the bank at the time of the Rosenberger Loan, yet blindly lent Gallagher Brothers funds without investigating. Given her business background and her history with and poor opinion of Mark Gallagher, the court is hard-pressed to find that Ms. Rosenberger could have justifiably relied on any alleged representation made by Mark Gallagher.

In addition, Ms. Cella testified that John Gallagher Painting was hired by Mark Gallagher as a commercial painter on approximately six jobs between 2012 and 2013. (TR at 229:22-230:2.) She further testified that Mark Gallagher was working on several different jobs at this time, and she would see his truck at different sites where she knew Mark Gallagher to be working. The Plaintiffs argue this is further evidence that Mark Gallagher in fact had income during the time period in question.

Mark Gallagher testified that these deposits were repayments of a loan he had made to Mark Gallagher Inc. (TR at 213:4-214-7.) Mark Gallagher argues that, as only repayments of loan amounts, these deposits were not income and should not have been reported as such on his Schedules of the Statement of Financial Affairs.

### a. The Statements were made under oath

"An 'oath' under § 727(a)(4)(A) of the Bankruptcy Code . . . includes the unsworn declarations contained in the Petition." *Bielan, Miklos & Makrogiannis v. Vasquez*, No. ADVPRO 08-1409 (DHS), 2010 WL 1644175, at *6 (Bankr. D.N.J. Apr. 21, 2010); See also, *In re Corona*, 2010 WL 1382122, at *7 (D.N.J. Apr. 5, 2010) (schedules and statements completed under oath, per Bankruptcy Rule 1008). As such, the Parties agree that the statements Mark Gallagher made on his petition were made under oath satisfying the first element of section 727(a)(4)(A).

### b. The Statements were false

Under the Internal Revenue Code ("Tax Code"), repayments of loans, as returns of capital, do not constitute taxable income. See, *Beckley v. Comm'r of Internal Revenue*, 130 T.C. 325 (2008). However, under the Tax Code, repayments of loan amounts do qualify as "Gross Income". "'Gross Income' is defined as 'the [t]otal income from all sources before deductions, exemptions or other tax reductions." *In re Kim*, 2011 WL 5902461 at *7 (Bankr. N.D. Ga. 2011). In *Kim*, the debtor asserted that she was only required to disclose taxable income on her Statement of Financial Affairs. The court found there is no support for such a limitation, and noted that the ". . . instructions to Official Form B7 to Question 2 of the SOFA specifically include sources of income which are not taxable . . ." *Id.*

As such, the deposits into the personal accounts of Mark and Pamela Gallagher did qualify as "income" under the Bankruptcy Code and that Mark Gallagher did not list such payments on his petition does establish that Mark Gallagher made a false statement under oath. Mark Gallagher's assertion that these were merely loan repayments and so did not have to be reported on the Statement of Financial Affairs is mistaken, as the Statement of Financial Affairs asks for all income from any source.

There is not sufficient evidence that Mark Gallagher failed to disclose and any other income during this time period. Although Ms. Cella testified that John Gallagher Painting had been hired by Mark Gallagher during this time, the Plaintiffs' did not submit any documentation of the payment receipts into evidence to show the dates on which these projects were completed, and did not submit any other evidence of these jobs excepting for the Ms. Cella's testimony.

Further, Ms. Cella was unclear in her testimony as to whether Mark Gallagher hired John Gallagher Painting personally, or whether Mark Gallagher hired the company through Mark Gallagher Inc., or possibly through Gallagher Brothers. However, even if Ms. Cella's testimony were sufficient to establish that John Gallagher Painting had been hired by one of Mark Gallagher's corporations, this alone would not be sufficient evidence to establish that Mark Gallagher himself had income in 2012 or 2013.

### c. Mark Gallagher's False Statements were not made knowingly or with fraudulent intent[5]

The Third Circuit has admonished that denying a debtor his discharge "is an extreme step and should not be taken lightly." *In re Belanger*, 524 B.R. 634, 637 (Bankr. E.D. Pa. 2015) (Quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993). To prove a claim under § 727(a)(4)(A), the evidence must show that the debtor intended to defraud his creditors or estate. *Id.* (Citing *In re Giquinto*, 388 B.R. 152, 179 (Bkrtcy.E.D.Pa.2008). In short, ". . . the objecting party must prove an 'actual intent on the part of the bankrupt to hinder, delay, and defraud his creditors.'" *In re Park*, No. 13-34203, 2016 WL 693492, at *3 (D.N.J. Feb. 18, 2016) (Quoting, *Georges v. Solodky (In re Georges)*, 138 Fed. Appx. 471, 472 (3d Cir.2005)). Omissions or false statements caused by an honest mistake or inadvertence are not sufficient to deny a discharge. *In re Spitko*, 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006) (Citing, *In re Georges*, 138 F. App'x at 471); *See Also, Melarango v. Ciotti (In re Ciotti)*, 448 B.R. 694, 704, (Bankr.W.D.Pa.2011) ("[A]n honest mistake or oversight is not sufficient to deny a debtor his discharge."). Furthermore, "Even a false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent' sufficient to deny a discharge." *Ciotti*, 448 B.R. at 704. A false oath is made 'knowingly' if the debtor makes it knowing it is false, or if it is made with reckless disregard for the truth. *Bielan, Miklos & Makrogiannis v. Vasquez*, No. ADVPRO 08-1409 (DHS), 2010 WL 1644175, at *7 (Bankr. D.N.J. Apr. 21, 2010)

However, because courts recognize that a debtor will be reluctant to admit that he was motivated by fraud, they have permitted fraudulent intent to be inferred from circumstantial evidence or a course of conduct. *Spitko*, 357 B.R. at 301 (Bankr. E.D. Pa. 2006) (Citing *In re Olivier*, 819 F.2d 550, 553 (5th Cir. 1987); *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986); *Matter of Hughes*, 184 B.R. 902, 908 (Bankr.E.D.La.1995)). "In establishing that a debtor acted with fraudulent intent, courts may look to circumstantial evidence and draw inferences from a course of conduct." *Bielan*, 2010 WL 1644175, at *7 (Citing *Scimeca v. Umanoff*, 169 B.R. 536, 542–43 (D.N.J.1993)). Similarly, "Recklessness [towards the truth] can in turn be inferred where there is a 'series or pattern of errors or omissions' on a debtor's petition." *Id.* (Citing, *Spitko*, 357 B.R. at 318; *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 48 (Bankr.W.D.Pa.2008) ("Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive."). By contrast, a single omission or false statement without other evidence of knowledge or intent to defraud may

---

[5] "While the issues of whether a debtor's false oaths were made knowingly and with fraudulent intent are two separate considerations under § 727(a)(4)(A), much of the analysis regarding a debtor's knowing false oath applies "with equal validity" to the issue of fraudulent intent." *Bielan, Miklos & Makrogiannis v. Vasquez*, No. ADVPRO 08-1409 (DHS), 2010 WL 1644175, at *9 (Bankr. D.N.J. Apr. 21, 2010) (Citing, *Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 155 (Bankr.W.D.Pa.2004). Thus, the factors are combined for purposes of this analysis.

not be enough to deny a debtor discharge under section 727(a)(4)(A). See, *In re Belanger*, 524 B.R. 634 (Bankr. E.D. Pa. 2015) (Ruling in the debtors' favor, despite the debtors' failure to disclose all their income on schedule I, and overstating several of their expenses on Schedule J, because the United States Trustee had not shown the debtors' to have knowingly or intentionally made these false statements); *In re McKee*, No. 11-25717 MER, 2013 WL 49775, at *5 (Bankr. D. Colo. Jan. 2, 2013), (Holding that the debtor's failure to disclose her interest in a house, or list the income from the sale of that house on her Statement of Financial Affairs, or her interest in her ex-husbands bonus were due to honest mistakes, and not a reckless disregard of the truth or any intent to defraud creditors).

Finally, courts have found that "The intent [to defraud] determination often will depend upon a bankruptcy court's assessment of the debtor's credibility, making deference to the [bankruptcy] court's finding particularly appropriate." *Neary v. Stamat*, No. 07 B 13379, 2009 WL 2916834, at *2 (N.D. Ill. Sept. 2, 2009), aff'd. 635 F.3d 974 (7th Cir. 2011) (Citing *Krehl*, 86 F.3d 737, 743 (7th 1996); *see also In re Weber*, 892 F.2d 534, 538 (7th Cir.1989) ("Special deference must be accorded to credibility determinations 'for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'").

In this case, the evidence shows that Mark Gallagher made a false statement by failing to list the loan repayments from Mark Gallagher Inc. as income. However, the court did not find by a preponderance of evidence that Mark Gallagher knew the statement was false or that he made the statement with an intent to defraud creditors. Mark Gallagher testified that the deposits listed on the Account Statements were repayments of a loan he had made to Mark Gallagher Inc. (TR at 213:4-214-7.) To support this assertion, he submitted into evidence his joint tax returns filed with his wife Pamela Gallagher, indicating that Mark Gallagher indeed had no income during the relevant time period. He believed he had no income based upon his understanding of the status of loan repayments. The Plaintiffs' submitted no additional evidence of the Mark Gallagher's intent to defraud and no other instances of false statements or omissions on the part of Mark Gallagher, or that Mark Gallagher had any other undisclosed income.[6] There is no pattern of multiple inconsistencies in this case, and there is no other indication that Mark Gallagher had any intent to defraud his creditors in failing to disclose these deposits on his petition. Further, the court found Mark Gallagher's testimony credible and that this false statement was an honest mistake or misunderstanding. The failure to list these deposits, by itself, is not enough to deny discharge to Mark Gallagher under section 727(a)(4)(A).

### d. Conclusion

The court cannot find that the Plaintiffs met their burden and established that Mark Gallagher made a false oath or account. Therefore, the court will deny the section 727 claims.

---

[6] The Plaintiffs' post-trial brief improperly refers several times to documents that were never submitted into evidence. The court cannot and did not consider these documents in its determination.

## CONCLUSION

The Plaintiffs failed in their burden to prove their claims by a preponderance of the evidence. Accordingly, the court finds in favor of Mark and Pamela Gallagher and denies the remainder of Plaintiffs' claims.

The court reserves the right to revise its findings of fact and conclusions of law.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: September 9, 2016